# AMERICAN RAILROAD COMPANY OF PORTO RICO
## *v.*
# PORTO RICO RAILWAY, LIGHT, & POWER COMPANY.

---

San Juan, Equity, No. 936.

APPLICATION FOR MANDATORY INJUNCTION.

Injunction—Verification.
  1. Under paragraph 5 of equity rule 25, an application can be made for an injunction, only upon filing a bill verified as upon knowledge.

American R. Co. v. Porto Rico R., L. & P. Co.

Injunction—Relief Clear.

2. An injunction will be granted only upon a bill making out a clear case.

Mandatory Injunction—Specific Performance.

3. Mandatory injunction will issue, in a proper case, for the specific performance of a contract.

Interstate Commerce Commission—Porto Rico.

4. The Interstate Commerce Commission has jurisdiction to enforce in Porto Rico the Federal safety appliance act.

Interstate Commerce Commission—Jurisdiction.

5. The Interstate Commerce Commission is authorized, after hearing parties interested, to proceed by orders in the matter at issue. Where a party has not been cited or heard by the commission, it has not had its day in court, and is not bound by the order.

Same—Safety Appliance Act.

6. The Interstate Commerce Commission has power to extend time for compliance with the act, but not to direct a railroad which has complied with the act to cease to comply with it, when the railroad has made no application for that purpose.

Injunction—Damages.

7. Where a defendant declines to haul cars of the complainant which are improperly equipped, but offers to rent the complainant cars which are properly equipped, *semble* that a mandatory injunction will not apply to accept the improperly equipped cars.

Injunction—Continuous Acts.

8. An injunction does not lie in a case which will require a continuous supervision of a business by the court.

Opinion filed June 26, 1913.

*Mr. F. H. Dexter* for complainant.

*Mr. J. Henri Brown* for defendant.

American R. Co. v. Porto Rico R., L. & P. Co.

HAMILTON, Judge, delivered the following opinion:

This is an application for a mandatory injunction to compel the performance of certain contracts made some years ago, by which the defendant agreed to haul the cars of the complainant. The defendant, on or about the 17th day of March, 1913, notified the complainant that it would no longer haul the cars of the complainant which were not equipped under the safety applicance act of Congress, and it has ceased doing so. The application is supported by affidavits showing that great injury will result if the contracts are not carried out. It is admitted that the cars of the complainant are not fitted up under the safety appliance law, and affidavits are filed by the defendant tending to show that it is dangerous to haul the cars as furnished.

The law covering the case is what is called the safety appliance law of March 2, 1893, which was extended to the territories by an amendment of March 2, 1903. By the terms of this amendment, it went into effect in the territories on September 1, 1903. It was not, however, supposed to apply to Porto Rico until the decision of the Supreme Court in the case of American R. Co. v. Didricksen, 227 U. S. 145, 57 L. ed. 456, 33 Sup. Ct. Rep. 224. The defendant equipped its rolling stock with the necessary appliances, but the complainant failed to do so, and applied to the Interstate Commerce Commission in the matter. The result was that the commission, by an *ex parte* order of April 17, 1913, directed that the time within which common carriers by railroad in Porto Rico shall comply with the safety appliance acts to any greater extent than they do at present be extended indefinitely.

American R. Co. v. Porto Rico R., L. & P. Co.

The case now rests upon the question whether this exempted the complainant from complying with the law, and upon the question whether it enabled the defendant to receive and handle cars not equipped under the act, when its own cars had been so equipped.

1. The defendant sets up in the first place that an application for an injunction can only be upon a bill verified as upon knowledge. This is true according to ¶ 5 of equity rule No. 25; and the court holds that the bill is not in such form that the relief asked by mandatory injunction can at present be granted. As this, however, is an amendable defect, it is deemed best to consider the bill amended in this particular, which is hereby directed, and proceed to decide the matter upon the merits of the application.

2. The question, therefore, is whether the case made out by the bill and affidavits comes within the rule as to injunctions. There is no dispute that, in order to obtain an injunction, the complainant must set out what is prima facie a clear case, and the rule is perhaps even stronger as to a mandatory injunction.

"An injunction of this character [preliminary] is said to be an act of extraordinary power on the part of the court in behalf of either party to an action before trial, is always cautiously granted, and it must fairly appear upon all the papers presented before such injunction is granted that the plaintiff will suffer irreparable injury if it be not issued, or that it is necessary to preserve the status of the parties, or some sufficient cause showing the need of hasty action exists. It should not be awarded except in clear cases of right, and where no doubt exists as to the claim of the plaintiff to the remedy he invokes. The rule is probably more correctly stated by saying that a

American R. Co. v. Porto Rico R., L. & P. Co.

temporary injunction will not be granted where it is not reasonably probable that the suit will be determined in plaintiff's favor." Joyce, Inj. § 109.

"An applicant for a preliminary mandatory injunction, quite as much as others, is required, however, to show a clear right, and a case of necessity or extreme hardship, and it is declared that the court will seldom grant a mandatory injunction *pendente lite,* unless the plaintiff's right is so clear that the denial of the right must be either captious or unconscionable. Therefore mandatory injunctions, which in effect anticipate the judgment or give some of the relief which it is sought to obtain by the decree of the court, should be granted with caution and only when the necessity is great. . . . The more general rule is that a mandatory injunction will not be granted until final hearing after there has been a trial of the action, and not then unless necessary to the complete execution of the decree of the court." Joyce, Inj. § 97-a. To the same effect, Spelling, Inj. & Extr. Rem. 2d ed. § 1021.

"When plaintiff's moving allegations are denied under oath in such a manner as to leave their truth in serious doubt, his application for an injunction should be denied, unless it clearly appears that the injunction will do the defendants no serious harm, and that its refusal will subject plaintiff to peculiar hardship." Joyce, Inj. §§ 20 & 137.

"A preliminary injunction should not be granted where plaintiff's right to it is doubtful." Joyce, Inj. § 21.

"It may be stated generally that a preliminary injunction will not be granted where the right upon which the complainant founds his claim is dependent upon a disputed question of law." Joyce, Inj. § 23.

3. Upon the other hand, there is no question that a mandatory injunction can issue in a proper case for the specific performance of a contract, which is substantially what is sought by the bill at bar. Joy v. St. Louis, 138 U. S. 1, 34 L. ed. 843, 11 Sup. Ct. Rep. 243; Union P. R. Co. v. Chicago, R. I. & P. R. Co. 163 U. S. 600, 41 L. ed. 278, 16 Sup. Ct. Rep. 1173.

4. The question therefore is, Does the bill of complaint present such a case as can be enforced by a mandatory injunction of this court?

When the defendant, on March 17, 1913, refused to receive the cars of the complainant which were not equipped with air brakes, the complainant presented to the Interstate Commerce Commission a petition requesting an extension of time for compliance by it with the requirements of the safety appliance acts, and on the 17th of April, at a general session of the Interstate Commerce Commission at its office in Washington, but without notice to the defendant in this case, the following order was made and entered:

"It appearing that in an opinion rendered on the 27th day of January, 1913, the Supreme Court of the United States held that the safety appliance acts of March 2, 1893, April 1, 1896, March 2, 1903, April 14, 1910, and March 4, 1911, extended to common carriers by railroad operating in Porto Rico (American R. Co. v. Didricksen, 227 U. S. 145, 57 L. ed. 456, 33 Sup. Ct. Rep. 224).

"It further appearing, that a petition has been filed with this commission by the Compañia de los Ferrocarriles de Puerto Rico and the American Railroad Company of Porto Rico, setting forth the alleged refusal of the Porto Rico Railway, Light, & Power Company to receive for transportation over its rails

freight loaded in the equipment of the petitioners, because it is asserted such equipment, although it practically complies with, does not meet fully the requirements of, the safety appliance acts; and praying an extension of time within which to meet such requirements:

"It is ordered that a proceeding of investigation be, and the same hereby is, instituted by the commission to determine the character and kind of equipment used in the transportation of passengers and property by common carriers by railroad in Porto Rico, the safety appliances now installed, and what further appliances are or may be required under the safety appliance acts:

"It is further ordered that the time within which common carriers by railroad in Porto Rico shall comply with the said safety appliance acts to any greater extent than they do at the present time be, and the same hereby is, extended to a date to be hereafter fixed by this commission:

"And it is further ordered that a copy of this order be served upon each common carrier by railroad in Porto Rico."

There is no dispute that the defendant knew of this order, and that its attention was called in writing to the matter by the complainant, but the defendant declined and declines to receive cars not equipped under the safety appliance acts. On the other hand, the defendant has offered to rent to complainant cars properly equipped, at what does not appear to be an unreasonable rental.

The bill alleges that under these circumstances the complainant has been compelled, at great trouble, loss, and expense, to provide for shipping freight between Rio Piedras and Caguas by means of motor trucks, in violation of the Interstate Com-

merce Act and of the contracts between the parties set out in the bill, and has been otherwise injured in the premises. Discrimination of different kinds is alleged, but is denied by affidavit of the defendant. Complainant alleges that this situation works irreparable damage, and that it is without adequate remedy at law, although in its bill it reserves the right to institute an action for damages.

Under these circumstances, the effect of the order of April 17th of the Interstate Commerce Commission becomes important.

Sec. 7 of the act of March 2, 1893, gave it power to extend the time for railroad compliance from time to time. 27 Stat. at L. p. 531, chap. 196, U. S. Comp. Stat. 1901, p. 3174. And by § 3 of the amendatory act of March 2, 1903, the original powers were retained. 32 Stat. at L. p. 943, chap. 976, U. S. Comp. Stat. Supp. 1911, p. 1314. This statute did not apply to Porto Rico, but it has become of importance here because the safety appliance act applies to Porto Rico. This was held in American R. Co. v. Didricksen, supra, decided January 27, 1913.

The employers' liability act of April 22, 1908, 35 Stat. at L. p. 65, chap. 149, U. S. Comp. Stat. Supp. 911, p. 1322, included the territories, the Canal Zone, and other possessions of the United States, and was held to apply to Porto Rico in the case of American R. Co. v. Birch, 224 U. S. 547, 56 L. ed. 879, 32 Sup. Ct. Rep. 603. The latter case did not pass upon the safety appliance act, but this has now been held applicable to Porto Rico by the Didricksen Case.

The enforcement of these acts is placed under the control of the Interstate Commerce Commission, and it is under this

authority that that commission issued the order of April 17th.

"By its decisions in the Abilene Cotton Oil Case, 204 U. S. 426, 51 L. ed. 553, 27 Sup. Ct. Rep. 350, 9 Ann. Cas. 1075, and in the Illinois Central Case, 215 U. S. 452, 54 L. ed. 280, 30 Sup. Ct. Rep. 155, the Supreme Court has erected this commission into what has been termed an 'economic court,' or, to give it a more commonplace definition, but one perhaps of stricter legal analogy, a select jury to pass upon the reasonableness and justice of railroad rates, rules, and practices. Within broad lines of discretion the courts regard the conclusions of the commission on questions of fact as final. There is an appeal upon questions of law by the carriers to the courts, but unless a constitutional guaranty is violated, the order of this commission is final, provided of course, the commission does not overstep the jurisdictional limits placed upon it by the statutes." See opinion in Re Advances In Rates-Western Case, 20 Inters. Com. Rep. 317.

"As a quasi-judicial body it exercises the judicial function of determining the reasonableness of existing rates, and of suspending proposed increases of rate pending investigation, and also of declaring the existence of undue discrimination or preference, entitling the complainant to reparation; and its findings in awards of damages for reparation are given prima facie weight in any judicial proceeding to enforce the same. It also exercises what has been repeatedly adjudged to be essentially a legislative power in fixing a maximum of rates for the future. This department of administration is in effect a distinct department of government, recognized as developed *ex necessitate* from the complexity of the functions of modern government in regulating the details of commercial intercourse. We are thus

compelled to revise our time-honored conception of the distribution of the powers of government, as we have not only executive, legislative, and judicial departments, but also the department of administration, distinct from, and yet to a degree exercising the functions which have been deemed appropriate to, each of the others." Judson, Interstate Commerce, § 52.

5. In the first place, it would seem that the commission is authorized to proceed by orders after hearing parties interested, and in this instance the defendant has not been cited and has not been heard, and so has not had its day in court. The commission attempted to proceed by a general order affecting all railroad interest, but on application of one and without citation to any others. The order, under these circumstances, is not binding upon the defendant.

6. Moreover, the power of the commission would not seem to go so far as to cover the case at bar. The commission has power to extend the time for compliance with the act, but in this case the defendant company had already complied with the act. The order, if it applies to the defendant in this case, would be not extending the time for compliance, but would be a dispensing power, taking the defendant outside the jurisdiction of the law, with which it had already complied, and to which it therefore was subject. The commission has no power to dispense with the further application of the law after it has been once fully complied with.

7. It is not at all clear, under the facts of this case, that an equitable remedy would lie at all, inasmuch as it is possible for the complainant to rent or otherwise acquire cars which do comply with the safety appliance act. If the rental charged by the complainant in this case is unreasonable, the complainant

would have its remedy at law for damages. If the defendant has the right to make any charge at all, and if the defendant has no right to refuse the cars of the complainant, and insists upon exacting a rental charge, it is but a question of damages in dollars and cents. It does not appear, therefore, that the complainant has not an adequate remedy at law, no allegation being made of insolvency in the matter.

8. The law is that an injunction lies for the performance of some single definite act, and not for the performance of a continuing contract. The result of such an injunction would be that a court would have to supervise a running business, and this is no part of the function of a court, except temporarily in case of receiverships. This is intended to last only until a business can be wound up or put on its feet again.

Upon the whole, therefore, this does not seem to be a case for the intervention of a court of equity by injunction, and the application for a mandatory injunction is refused. An order will be so entered.